JOSEPH N. AKROTIRIANAKIS (State Bar No. 197971)
*jakro@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:    (213) 443-4355
Facsimile:    (213) 443-4310

MATTHEW H. DAWSON (State Bar No. 307350)
*mdawson@kslaw.com*
KING & SPALDING LLP
601 South California Avenue, Suite 100
Palo Alto, CA 94304
Telephone:    (650) 422-6700
Facsimile:    (650) 422-6800

Attorneys for Plaintiff VERITAS TECHNOLOGIES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VERITAS TECHNOLOGIES LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CUSHMAN & WAKEFIELD, INC.,<br><br>        Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT                                                                 CASE NO.

Plaintiff Veritas Technologies LLC ("Veritas") brings this action against Cushman & Wakefield, Inc. ("Cushman") for breach of contract and related claims.

**INTRODUCTION**

1. This dispute arises from an outsourcing relationship between Veritas and Cushman. Veritas retained Cushman to manage office buildings for Veritas and its affiliates in twenty countries and to provide real estate project management, brokerage and other transaction management services for Veritas and its affiliates worldwide. The final contract, the Veritas Global Master Services Agreement ("Master Services Agreement"), was executed in August 2016. (A copy of the Master Services Agreement and relevant exhibits is attached, with commercially-sensitive items redacted.) Over the next two-and-a-half years, Veritas became increasingly dissatisfied with Cushman's services. Cushman improperly billed certain costs to Veritas, delivered opaque invoices with inadequate descriptions of the services rendered, performed work outside the scope of the services without authorization, mismanaged projects resulting in budget overruns, and attempted to charge an excessive commission rate for a commercial real estate transaction.

2. Veritas terminated the Master Services Agreement with effect from April 30, 2019, and transitioned management of its properties to another real estate services provider. In response, Cushman threatened to bill Veritas a "substantial" amount for severance payments Cushman allegedly was required to pay certain Cushman employees in connection with the termination of the Master Services Agreement. Cushman initially claimed that it was unable to find new positions for certain employees who previously worked on Veritas' account, despite Cushman's global span and numerous customers, and during the course of discussions regarding the parties' respective obligations in connection with the transition of services to a new service provider, Cushman altered a document relating to the parties' transition obligations so that it falsely appeared that Veritas had agreed to reimburse Cushman for severance payments. A year after the contract was terminated, Cushman purported to increase its "severance" demand to more than $600,000. Cushman has also refused to reimburse Veritas for improperly billed costs and to pay Veritas the balance of a commission rebate account owed to Veritas. The aggregate

1  amount of these improperly billed costs and the unpaid rebate account balance is almost
2  $2,000,000.  Regrettably, Veritas is left to enforce its rights through court processes.

**PARTIES**

3.      Plaintiff Veritas is a Delaware limited liability company headquartered in Santa Clara, California.  Veritas is a data management software company with offices in thirty-seven countries around the world.  Veritas has a single member, a Delaware corporation which, for diversity purposes, is a is a citizen of Delaware.

4.      Defendant Cushman is a New York corporation with its principal place of business in Chicago, Illinois.  Cushman is a global firm that provides commercial real estate services.  According to Cushman, its operations in 2018 spanned seventy countries, employed 51,000 team members, and generated $8.2 billion in revenue.

**JURISDICTION**

5.      This court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §1332(a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  The court has personal jurisdiction over Defendant because Defendant has consented to personal jurisdiction. (Master Services Agreement, Section 47.10.)

**VENUE AND INTRADISTRICT ASSIGNMENT**

6.      Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the complaint occurred in this District.  Moreover, assignment to this District's San Jose Division is appropriate because a substantial part of the events giving rise to the claims occurred in Santa Clara County, California, where Veritas maintains its principal place of business.  Furthermore, the parties' Master Services Agreement requires that any litigation arising under the contract be brought in Santa Clara County, California.

**FACTS COMMON TO ALL CLAIMS**

7.      In 2016, Veritas renegotiated the structure and framework of its existing relationship with Cushman, pursuant to which Cushman had provided facilities management services and certain other commercial real estate services to Veritas.

8.      The parties eventually entered into the Master Services Agreement on August 24, 2016.  Under the contract, Veritas paid Cushman to assume certain business functions relating to Veritas' offices around the world.  *First*, Cushman was responsible for facilities management.  Cushman was required to keep Veritas' office buildings running by managing building operations and by ensuring that maintenance, janitorial, landscaping, groundskeeping, recycling, mailroom, food service, pest control, and other services were provided.  *Second*, Cushman was responsible for real estate project management, including management of construction projects, such as refitting a floor in an office building, constructing an extension to an office building, or reconstructing kitchens and restrooms.  *Third*, Cushman was tasked with handling commercial real estate transactions.  Cushman is a commercial real estate broker in many countries and was intended to serve as Veritas' broker in real estate purchase, sale, and lease transactions.  Cushman also managed Veritas' leases and relationships with landlords.

9.      From the outset, Veritas was dissatisfied with Cushman's performance under the Master Services Agreement.  Cushman delivered opaque invoices with cursory and inadequate descriptions of the services rendered, some of which were improperly performed or out of scope, and Veritas was required to scrutinize invoices in order to identify inappropriate charges and request the reversal of these charges when Veritas was able to identify them.  By way of example, Cushman personnel worked on unauthorized, out-of-scope matters, including an environmental, health and safety ("EHS") project that was out of scope and had not been authorized by Veritas, and continued to discuss the renewal of a contract with an outside vendor which Veritas had terminated, notwithstanding Veritas' instructions not to do so.  On another occasion, Cushman improperly attempted to charge a lease commission in India at a rate twice than what was permitted in the Master Services Agreement.  As a result of these and other incidents, Veritas eventually lost trust in Cushman's ability to perform the services in accordance with the Master Services Agreement.

10.     *Cushman Billed Improper Costs to Veritas*.  Over a period of twenty-one months between 2016 and 2018, a period covering the first two years of the contract term, Cushman billed Veritas at least $380,930.35 for EHS services.  The Master Services Agreement did not

3
COMPLAINT                                                                 CASE NO.

authorize Cushman to perform services unless the services were set forth in an agreed budget or obtained the written consent of Veritas with respect to a particular unbudgeted expense. The Master Services Agreement contemplated the possibility of EHS services, but the budget for the first two years of the contract term included no budget allocations for EHS services, and Veritas did not provide written consent for the EHS services performed by Cushman. Without such written consent, Cushman's performance of these EHS services was improper, and Cushman should not have billed the costs of these EHS services to Veritas.

11. Furthermore, even if Veritas had consented to the performance of these EHS services, the services performed would have exceeded the scope of the services provided in the Master Services Agreement. The Master Services Agreement permits Cushman to bill Veritas for EHS services only if those services are intended to ensure that *Cushman*, its personnel, and its subcontractors complied with the law while managing Veritas facilities. Veritas initially paid the requested amounts but after review and analysis of Cushman's invoices, Veritas subsequently determined that the services exceeded the limited scope described in the contract. All of the services in question were provided by a single individual, Mr. Robert Lucacher, who received substantial bonuses from Cushman for (among other things) developing EHS programs for *Veritas'* own personnel, rather than *Cushman's* personnel. Once the excessive services were fully disclosed to Veritas, Veritas instructed Cushman to withdraw Mr. Lucacher from its account and ensure that no fees related to EHS services were included in any future budget.

12. *Cushman Improperly Billed Veritas for Budget Overruns*. In early 2019, Veritas engaged Cushman to manage a construction project in Sao Paolo, Brazil. Cushman exceeded the project budget by at least $249,047.12, which Veritas' accounting department paid in order to meet the payment terms of the Master Services Agreement before Veritas' workplace management department could fully validate the charges. In the Master Services Agreement, Section 5.3(b) of Exhibit D provides that Cushman is responsible for the additional costs unless Veritas approves the overrun in writing or unless certain exceptions (not applicable here) apply. Veritas approved $9,422.63 in additional expenses to replace several doors. Veritas did not approve nearly a quarter million dollars in overages—an increase of 22.5 percent over the

entirety of initial budget.

13. *Cushman Refuses to Pay Rebates for Commissions, Owed to Veritas, That Cushman Received in Real Estate Transactions.* Under the Master Services Agreement, Cushman served as a commercial real estate broker in return for commissions on transactions. In markets where a party other than Veritas would pay the commission, Cushman was required to rebate those commissions to Veritas. The Master Services Agreement, section 6.5 of Exhibit D, establishes the rebate owed. Rebates ranged from 0 to 40 percent of the commission received from the third party. Cushman has held these commission rebates in an account as an extracontractual form of "security" for monies it claims Veritas owes, and Cushman has refused to release to Veritas the commission amounts it owes. According to Cushman's own "Client Fee Share Report" provided Veritas on April 14, 2020, Cushman agreed $1,335,081.85 was the amount of the commissions it received and did not rebate to Veritas. Even assuming Cushman was owed a ten-percent transaction fee (as Cushman claims), it admits in an account stated that it owes Veritas $1,201,573.66.

14. In addition, Cushman owes at least another $70,843.00 in rebates for commissions it received from Veritas' landlord in Balewadi, India, and from two landlords in Singapore (Huajiang Properties Pte Ltd. and HTSG).

15. *Cushman Improperly Billed Veritas for Severance Payments.* Between September 2018 and January 2019, Cushman billed Veritas $32,775.52 for severance payments to three employees in California and Florida. Veritas paid the invoices. The Master Services Agreement, however, only requires Veritas to reimburse severance payments for a limited time that had already elapsed. Attachment E to Exhibit D of the Master Services Agreement provides for severance payments only during the first two years of the contract term, a period that ended on August 23, 2018.

16. In February 2019, Veritas exercised its right to terminate the Master Services Agreement for convenience under Section 38.2. It provided Cushman with at least sixty days' notice, confirming that termination would be effective as of April 30, 2019.

17. Veritas retained CBRE, Inc., to replace Cushman. Cushman transitioned its

services to CBRE by April 30, 2019.

18. Shortly before the effective date of the termination, Cushman informed Veritas by email that it would incur severance and other redundancy costs. Cushman claimed that it did not expect to find alternative work for a number of its employees who handled the Veritas account. Veritas informed Cushman by email that it was not responsible for these costs. Veritas also notified Cushman that it was reviewing the potentially improper requests for reimbursement described above, including prior requests for severance payments to Cushman employees.

19. Pursuant to the dispute resolution provisions of the Master Services Agreement, Veritas and Cushman exchanged numerous letters between April 2019 and October 2019 in an attempt to resolve informally any outstanding issues, including improper billing by Cushman, budget overruns incorrectly billed to Veritas, missing commission rebates, and severance payments. The parties held a series of telephone conferences between various Cushman and Veritas executives between July 2019 and October 2019. No resolution was reached. Veritas nonetheless continued to pursue an amicable resolution, and the parties continued to exchange correspondence related to their dispute.

20. The amount Cushman claims to be owed for "severance" payments has increased over time. On October 17, 2019, Cushman informed Veritas that the severance payments in dispute totaled $586,693.06. Cushman later increased this amount to $619,091.14 in a letter dated April 14, 2020, almost a year after the effective date of termination.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**(Common Count for Account Stated)**

21. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 20 above as though fully set forth herein.

22. Cushman owes Veritas at least $1,201,573.66 on an account stated by Cushman in the "Client Fee Share Report" Cushman presented to Veritas on April 14, 2020, for rebates Cushman had failed to pay to Veritas.

23. By its account stated, Cushman has admitted that this amount is due to Veritas.

24. In spite of this admission, Cushman has not paid Veritas any of the amount owed under this account.

25. In addition to the amount of the account stated, Veritas is entitled to prejudgment interest at the statutory rate of ten percent per annum, pursuant to California Civil Code § 3289(b).

26. Moreover, pursuant to the underlying contracts governing rebate commissions, Veritas is also entitled to recover all costs of any action to enforce its rights—including, but not limited to, investigation costs, court costs, reasonable attorneys' fees, and expenses incurred.

## SECOND CAUSE OF ACTION

**(Breach of Contract)**

27. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 26 above as though fully set forth herein.

28. Veritas and Cushman entered into the Master Services Agreement, a valid and enforceable contract.

29. Veritas performed all, or substantially all, of its obligations under the Master Services Agreement;

30. Cushman breached the Master Services Agreement by:

    a. Billing Veritas at least $380,930.35 in environmental, health, and safety services that were prohibited from being passed on to Veritas under the terms of the contract;

    b. Billing Veritas at least $249,047.12 for budget overruns in connection with a Brazilian construction project that Cushman was prohibited from passing on to Veritas under the terms of the contract;

    c. Should the trier of fact determine that there is no account stated (as alleged in the First Cause of Action), refusing to pay at least $1,201,573.66 in commission rebates that Cushman was contractually obligated to pay Veritas during the term of the Master Services Agreement, as set forth in Cushman's account stated on December 26, 2019;

    d. Refusing to pay at least $70,843.00 of post-termination commission rebates related to leases in India and Singapore, which Cushman was contractually required to

1  pay to Veritas after receiving the commissions; and

2             e.     Billing Veritas at least $32,775.52 for severance payments during the third
3  year of the Master Services Agreement, which the Master Services Agreement prohibits
4  Cushman from billing to Veritas.

5       31.    Cushman's breaches of contract were a substantial factor in causing harm to
6  Veritas, as Veritas paid charges that were prohibited under the Master Services Agreement and
7  was deprived of sums owed under the contract.

8       32.    Veritas has suffered harm as a result of Cushman's breaches in an amount to be
9  determined at trial, but no less than $1,935,169.65.

10      33.    Pursuant to California Civil Code § 3289(b), Veritas is entitled to prejudgment
11 interest on all outstanding contractual obligations, in an amount to be determined at trial, running
12 from the time that each breach occurred, at the statutory rate of ten percent per annum.

13      34.    Moreover, pursuant to the contracts governing rebate commissions, Veritas is also
14 entitled to recover all costs of any action to enforce its rights—including, but not limited to,
15 investigation costs, court costs, reasonable attorneys' fees, and expenses incurred to recover
16 those amounts.

## THIRD CAUSE OF ACTION

**(Breach of Covenant of Good Faith and Fair Dealing)**

19      35.    Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through
20 34 above as though fully set forth herein.

21      36.    Implied in every contract or agreement is a promise of good faith and fair dealing.
22 This means that each party agrees not do anything to unfairly interfere with the right of the other
23 party to receive the benefits of the agreement.

24      37.    Veritas and Cushman are parties to a contract arising from Cushman's
25 performance of certain services in return for millions of dollars in consideration from Veritas.

26      38.    Veritas has complied with its obligation of good faith and fair dealing under the
27 parties' agreement by performing its obligations and paying Cushman all amounts owed under
28 the Master Services Agreement.

39. Cushman breached its obligation of good faith and fair dealing by unfairly interfering with Veritas' right to receive certain payments and to receive services at the agreed upon price by improperly altering documents after the fact to make it appear that the parties' agreements were other than what they had, in fact, agreed, fabricating supposed "offsets," disputing and refusing to pay certain fees owed to Veritas, and by billing for improper costs.

40. As a result of Cushman's breach, Veritas has suffered damages in an amount to be proven at trial, including, but not limited to, unpaid sums totaling at least $1,935,169.65.

## FOURTH CAUSE OF ACTION

### (Conversion)

41. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 40 above as though fully set forth herein.

42. Cushman has wrongfully exercised control over personal property owned by Veritas.

43. Veritas has a right to possess all funds erroneously paid to or improperly retained by Cushman, including but not limited to:

    a. At least $380,930.35 erroneously paid to Cushman for improperly billed environmental, health, and safety services;

    b. At least $1,201,573.66 in commission rebates Cushman admits it owes but refuses to pay, based on the false assertion that it is entitled to an offset against that amount.

    c. At least $249,047.12 erroneously paid to Cushman for improperly billed Brazilian construction charges; and

    d. At least $32,775.52 erroneously paid to Cushman for improperly billed severance payments during the third year of the Master Services Agreement.

44. Cushman intentionally and substantially interfered with Veritas' property by refusing to remit the sums after Veritas demanded their return.

45. Veritas did not consent to Cushman's continued retention of funds remitted to it in error.

46. Cushman's conduct was a substantial factor in causing harm to Veritas.

47. Veritas was harmed in an amount to be determined at trial, but no less than $1,864,326.65.

48. Pursuant to California Civil Code § 3336, Veritas seeks interest from the time that each sum described above, or each payment comprising the sums described above, was converted by Cushman through present, with the amount to be determined at trial.

49. As Veritas was also forced to expend time and resources attempting to recover the specific sums described above, and thus seeks reasonable compensation for the time and money spent in an amount to be determined at trial.

50. Finally, Veritas is entitled to an award of exemplary damages, as Cushman's conduct evinces malice, oppression, and fraud. Cushman has offered no plausible explanation for failing to remit the converted funds. Rather, Cushman acknowledged that it deliberately retained certain funds—in knowing disregard of Veritas' rights—as "security" in relation to the parties' negotiations over severance costs. Moreover, Cushman maliciously, oppressively, and fraudulently altered documents and fabricated "offsets," as described above.

## FIFTH CAUSE OF ACTION

### (Common Count for Money Had and Received)

51. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 50 above as though fully set forth herein.

52. Cushman has received money that was intended to be used for the benefit of Veritas, including at least $1,201,573.66 in commission rebates Cushman admits it owes but refuses to pay, at least $380,930.35 erroneously paid to Cushman for improperly billed environmental, health, and safety services; at least $249,047.12 erroneously paid to Cushman for improperly billed Brazilian construction charges; and at least $32,775.52 erroneously paid to Cushman for improperly billed severance payments during the third year of the Master Services Agreement.

53. Cushman has not used any of funds for the benefit of Veritas.

54. Cushman has not given the money to Veritas.

55. The funds described should, in equity and good conscience, be paid over to

10

COMPLAINT                                                          CASE NO.

Veritas.

## SIXTH CAUSE OF ACTION

**(Unfair Competition)**

56. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 55 above as though fully set forth herein.

57. California's Unfair Competition Law ("UCL"), as codified in California Business & Professions Code § 17200 *et seq.* prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

58. Cushman's refusal to pay Veritas commission rebates and refunds for improper billing practices constitute unlawful, unfair, and fraudulent business acts and/or practices and thereby constitute unfair competition under the UCL.

59. Veritas has suffered harm as a result of Cushman's conduct alleged herein and will continue to suffer harm in the absence of the payments that it is owed.

60. Veritas is entitled to an award of restitution in an amount sufficient to repair the injuries it has suffered.

## SEVENTH CAUSE OF ACTION

**(Unjust Enrichment)**

61. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 60 above as though fully set forth herein.

62. Veritas alleges that it entered into a valid and enforceable contract with Cushman. Should the Court or a factfinder conclude otherwise, or conclude that certain claims or overpayments are not governed by the contract, Veritas alleges that Cushman unjustly received at least $1,935,169.65 from Veritas as a result of its wrongful conduct alleged herein and its refusal to pay Veritas commission rebates owed or to refund overpayments for improper expenses.

63. As a result, Veritas has conferred a benefit upon Cushman to which it is not entitled. Cushman has knowledge of this benefit, has wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained benefits conferred upon it.

64. Cushman will be unjustly enriched if allowed to retain such funds.

65. As a result of Cushman's conduct, Veritas has directly and legally suffered actual damages including, but not limited to, loss of at least $1,935,169.65, costs of suit, and other pecuniary loss in an amount to be proven at trial. Accordingly, Veritas seeks restitution from Defendants.

## EIGHTH CAUSE OF ACTION

### (Declaratory Relief)

66. Plaintiff hereby repeats and incorporates the allegations of paragraphs 1 through 65 above as though fully set forth herein.

67. An actual, present, and justiciable controversy has arisen between Veritas and Cushman concerning their respective rights under the Master Services Agreement.

68. Cushman claims that Veritas owes $619,091.14 for severance payments made to Cushman personnel who were laid off as a result of the Master Services Agreement being terminated. Veritas denied responsibility for those payments under the Master Services Agreement, prompting Cushman to send a demand letter regarding Veritas' supposed breach. Cushman also invoked the dispute resolution provisions of the Master Services Agreement, which have since been exhausted.

69. Veritas thus seeks declaratory judgment that the Agreement does require it to reimburse termination fees paid to Cushman personnel.

70. Section 39.4 of the Master Services Agreement requires Veritas to reimburse Cushman for certain costs incurred by Cushman as a result of termination for convenience. Specifically, Section 39.4 requires Veritas to (i) pay all amounts due and payable to Cushman under the Master Services Agreement up to the date of termination and (ii) reimburse Cushman for all reasonably incurred out-of-pocket costs or expenses payable by Cushman to third parties directly relating to the termination of the services for convenience, in an aggregate amount not to exceed $250,000.

71. With respect to the first category of payments, severance payments would typically not be accrued until after the contract (and any redundant personnel) were terminated. Furthermore, Section 8.1(b) of Exhibit D mandates that any expenses Cushman incurs in the

performance of the services must be included in the annual budget agreed by the parties. Severance was expressly addressed in Exhibit D, Attachment E, Section 7 ("Other Costs"), which shows that the parties budgeted $446,536 for the first year of the contract (August 24, 2016 to August 23, 2017), $157,978 for the second year (August 24, 2017 to August 23, 2018), and nothing for subsequent years. The annual budget for the third year of the contract (August 24, 2018 to August 23, 2019) contained no line item for severance. The allocation of severance to the first two years reflects anticipated cost reductions and efficiencies that Cushman was supposed to implement under the Master Services Agreement. Accordingly, severance and redundancy payments do not qualify as amounts due and payable to Cushman under Section 39.4(i).

72. With respect to the second category of payments, severance payments by "Supplier to third parties" necessarily excludes payments by Cushman to its own personnel. The term "Supplier" is defined in Sections 1.1(ccc) and 1.1(nn) of the Master Services Agreement to include Cushman's officers, employees, subcontractors, agents, and affiliates.

73. Furthermore, after Veritas delivered notice of termination to Cushman, Cushman prepared a "turnover plan." The version of the turnover plan originally submitted to Veritas for approval did not include a line item for severance. After Veritas' approval of the turnover plan, Cushman inserted a line item for severance without notice to Veritas.

74. Veritas therefore seeks declaratory judgment that the Master Services Agreement does not require it to reimburse Cushman's severance and redundancy payments to personnel who worked on Veritas' account.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. An award of compensatory damages in an amount to be proven at trial;
2. An award of fair compensation for the time and money properly expended in pursuit of its property;
3. Exemplary damages;
4. For restitution according to proof;

5. Prejudgment interest in an amount to be determined at trial;

6. For cost of the suit incurred herein;

7. An entry of judgment consistent with the declaratory relief sought; and

8. For attorney's fees as permitted by law; and

9. For such further and other relief in law or equity that the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 1, 2021                    Respectfully submitted,

                                        KING & SPALDING LLP


                                        By: /s/Joseph N. Akrotirianakis
                                            JOSEPH N. AKROTIRIANAKIS
                                            MATTHEW H. DAWSON

                                            *Attorneys for Plaintiff Veritas Technologies LLC*