1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

VERITAS TECHNOLOGIES LLC,

9
            Plaintiff,

10
      v.

11
CUSHMAN & WAKEFIELD, INC.,

12
            Defendant.

Case No.  21-cv-01467-CRB

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

13        Plaintiff Veritas Technologies LLC ("Veritas") brought suit against Defendant Cushman &

14   Wakefield, Inc. ("C&W") based on Veritas's early termination of an outsourcing agreement with

15   C&W.  Compl. (dkt. 1) ¶ 1.  C&W now moves for judgment on the pleadings as to Veritas's

16   claims for (1) declaratory judgment, (2) account stated, (3) breach of contract, (4) breach of the

17   covenant of good faith and fair dealing, (5) money had and received, (6) unfair competition, (7)

18   unjust enrichment, and (8) exemplary damages.  See generally MJOP (dkt. 35).  For the reasons

19   set forth below, the Court GRANTS in part and DENIES in part C&W's motion.

20   **I.      BACKGROUND**

21        Veritas is a data management software company with offices in thirty-seven countries.

22   Compl. ¶ 3.  C&W is a global firm that provides commercial real estate services in more than

23   seventy countries.  Id. ¶ 4.

24        **A.      Master Service Agreement**

25        On August 24, 2016, the parties entered into a Master Service Agreement (MSA) in which

26   C&W agreed to provide certain business functions for Veritas's offices, such as managing

27   facilities and real estate projects, and handling commercial real estate transactions as Veritas's

28   broker.  Id. ¶¶ 7–8; see also MSA (dkt. 1-1, Attach. 1) at 5.  In January 2019, Veritas terminated

United States District Court
Northern District of California

the MSA for convenience—rather than for cause—alleging dissatisfaction with C&W's

performance.  See Compl. ¶¶ 9, 16.  Veritas's termination notice informed C&W that termination

would take effect on April 30, 2019.  Id. ¶ 16.

### 1. Effects of Termination for Convenience

Section 38.2 of the MSA explains that "Termination for Convenience" limits Veritas's

liability "except to the extent specified in Section 39 (Effects of Termination) or in a Transition

Plan, Scope of Services or Country Agreement."  MSA § 38.2.  Under the MSA, C&W must

continue to provide services during the "Disengagement Period" at the "same service levels and

overall cost and rates in effect prior to notice of termination."  Id. § 39.1(b)(iv).  Likewise, Veritas

is required to "pay all amounts due and payable" to C&W "up to the date of [] termination" and

reimburse C&W for "all reasonably incurred out-of-pocket costs or expenses payable by [C&W]

to third parties directly relating to the termination of the Services."  Id. § 39.4 (emphasis added).

Section 39 clarifies that costs and expenses for Termination for Convenience do not include "lost

profits, lost revenue or similar indirect costs."  Id.

### 2. Amounts Due and Payable

Section 23.1—"Amounts Payable by Veritas"—states that "Veritas shall pay the Charges

to or for the benefit of [C&W] as described and at the times provided in Exhibit D (Pricing and

Financial Provisions)."  MSA § 23.1.  It further explains that "Veritas shall not be responsible for

the payment . . . of any charges, fees or other amounts not expressly described or referenced in

Exhibit D."  Id. (emphasis added).  Section 23.2 explains that C&W "shall not charge Veritas for

any fees, charges, expenses (including . . . any additional or unforeseen costs incurred by [C&W])

in addition to the Controllable Costs without the prior written consent of Veritas."  Id. § 23.2

(emphasis added).  Therefore, Exhibit D establishes the limits on what amounts C&W can charge

Veritas as "due and payable" under the agreement.  See id. § 39.4.

### a. Controllable Costs

The MSA defines "Controllable Costs" as "all charges, costs and expenses that [C&W]

incurs or expects to incur or directly manage during the Fiscal Year corresponding to the Annual

Budget for such Fiscal Year," requiring these costs be detailed in an Annual Budget and invoiced

as "Pass-Through Expenses."[1]  See MSA, Ex. D (dkt. 1-1) at 2, 7 (hereinafter Ex. D).  The definition also makes clear that "Controllable Costs" include "all other charges, costs and expenses incurred to perform the Services that do not fall within the definition of Other Costs, Non-Controllable Costs[2] or costs classified as retained in Attachment A to [Exhibit D]."  Id.

### b.    "Severance Fees" as Other Costs

Exhibit D, Attachment E defines "Other Costs" as "costs directly required for the delivery of the Services [as] set forth in Attachment E (Financial Spreadsheets), Tab 7 (Other Costs)."  Id. at 3.  Tab 7, Line 5 lists "Severance Fees" under the heading of "Other Costs," and describes the fees as "[s]everance to be distributed based on headcount reductions."  See MSA, Attach. E (dkt. 1-1) at 13 (hereinafter Attach. E); see also Opp'n (dkt. 39) at 10.  Therefore, Tab 7, Line 5 suggests that "Severance Fees" are not part of "Controllable Costs."  Notably, Attachment E only lists dollar amounts for Year 1 and Year 2 pertaining to Severance Fees.

### c.    Severance as a Pass-Through Expense

Exhibit D, Attachment A's Item 3.2 lists "Labor related support costs," including "Severance for [C&W] Personnel," as a "Pass-Through Expense," meaning that they are "separately reimbursable to [C&W]."  See Attach. A at A-1–A-2 (emphasis added).  Similarly, Attachment E, Tab 8 (Assumptions), Line 5, the tab immediately following the Tab pertaining to Severance Fees, states that an agreed assumption under the MSA is that "severance" is not included in C&W's "burden rate"[3] and is "paid by [Veritas] whenever payable."  See Attach. E at 15 (emphasis added).

### 3.    Dispute Resolution Process

Under the MSA, the parties are required to comply with a specific dispute resolution

---

[1]  Exhibit D defines pass-through expenses as "charges and expenses . . . payable on a pass-through basis."  See Ex. D at 3.  Attachment A suggests that "Pass-Through" expenses are "separately reimbursable" to C&W.  See Ex. D, Attach. A (dkt. 1-1) at A-1.

[2]  Exhibit D defines "Non-Controllable Costs" as simply "those costs, charges and applicable fees associated with the Services . . . that [C&W] pays or accrues during provision of the Services that are not Controllable Costs."  Ex. D at 3.

[3]  Exhibit D defines "Burden" as "all employment-related costs and charges directly incurred by [C&W] . . . other than salary/hourly wage" and specifies that such "costs and charges" will be "calculated by [C&W] at certain rates . . . identified in Attachment E (Financial Spreadsheets), Tab 1 (Burden Rates)."  See Ex. D at 1.

3

process before commencing any court proceedings regarding the MSA.  See MSA § 34.1.  This process applies to any "Dispute," defined broadly as any "controversy, claim, difference or question arising out of or relating" to the MSA.  See id. § 34.2.  It involves a four-step process that requires: (1) the party raising the dispute to notify the other party about the details of the dispute in writing, (2) an initial attempt to resolve the dispute by the parties' representatives, (3) if the initial attempt is unsuccessful, after 10 business days the parties must refer the dispute to specific senior executives from each party, and (4) if the senior executives are also unsuccessful, after 20 business days, the parties must refer the dispute to Veritas's Chief Financial Officer ("CFO") and C&W's Chief Executive Officer ("CEO") of Global Occupier Services for resolution.  Id. § 34.3.  If the parties' CFO and CEO are also unable to resolve the dispute within 30 business days, the MSA allows either party to commence court proceedings or attempt to resolve the dispute through other means.  Id. § 34.4.  If one party fails to comply with the dispute resolution process, the non-breaching party is exempt from complying with the process.  MSA § 34.7.

### B.      Disputes Arising from the Disengagement Period

During the disengagement period, the parties disagreed about which party was responsible for several categories of payments and expenses.  See Compl. ¶¶ 18–20.  These disputes focused primarily on (1) severance payments to C&W's employees, (2) costs for certain environmental, health and safety ("EH&S") services, (3) costs for budget overruns in Brazil, and (4) unpaid commission rebates to Veritas.  See id. ¶¶ 9–20.  The parties made numerous unsuccessful attempts to resolve the disputes.  See id. ¶¶ 18–20.  Veritas brought suit, see generally Compl., and C&W brought the pending motion, see generally Mot.

## II.     LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted).  "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved[.]'"  McGlinchy v.

United States District Court
Northern District of California

1  Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) (citation omitted).  A court "must presume all

2  factual allegations of the complaint to be true and draw all reasonable inferences in favor of the

3  nonmoving party."  Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).

4      "[A]nalysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)

5  because, under both rules, 'a court must determine whether the facts alleged in the complaint,

6  taken as true, entitle the plaintiff to a legal remedy.'"  Chavez v. United States, 683 F.3d 1102,

7  1108 (9th Cir. 2012) (citation omitted).  Dismissal may be based on either "the lack of a

8  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

9  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  A complaint must plead

10  "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.

11  662, 697 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is

12  plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

13  inference that the defendant is liable for the misconduct alleged."  Id. at 678.

14      Rule 12(d) requires a court examining a motion under Rule 12(c) to either exclude matters

15  outside the pleadings or treat the motion as one for summary judgment.  "A court may, however,

16  consider certain materials—documents attached to the complaint, documents incorporated by

17  reference in the complaint, or matters of judicial notice—without converting

18  the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d

19  903, 908 (9th Cir. 2003).

20  **III.   DISCUSSION**

21      C&W moves for judgment on the pleadings.  See generally MJOP.  As explained below,

22  the Court first DENIES the motion as to Veritas's claim for declaratory judgment because the

23  MSA is ambiguous about severance payments.  Second, the Court DENIES the motion as to

24  Veritas's claim for commission rebates because Veritas sufficiently pled that it generally adhered

25  to the dispute resolution process in the MSA.  Third, the Court DENIES the motion as to Veritas's

26  claim for damages under its breach of contract claim because C&W failed to show prejudice in

27  connection with its laches defense.  Fourth, the Court GRANTS the motion as to Veritas's claim

28  for an account stated because no new contract was created by C&W providing Veritas with a

United States District Court
Northern District of California

"Client Fee Share Report."  Fifth, the Court DENIES the motion as to Veritas's claim for breach of the covenant of good faith and fair dealing because Veritas alleges more than a breach of contract.  Sixth, the Court DENIES the motion as to Veritas's claim for money had and received because the claim does not "fall" with the claim for an account stated.  Seventh, the Court GRANTS the motion as to Veritas's unfair competition claim because Veritas failed to explain or plead that damages were an insufficient remedy.  Eighth, the Court DENIES the motion as to Veritas's claim for unjust enrichment because Veritas pleads this claim in the alternative and limits it to circumstances where the MSA is unenforceable.  Finally, the Court GRANTS the motion as to Veritas's request for exemplary damages because these are precluded as a matter of law.  The Court begins with the request for judicial notice in this case.

### A.    Judicial Notice

Courts may take judicial notice of facts that are "not subject to reasonable dispute" because they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  These sources include "undisputed matters of public record . . . including documents on file in federal and state courts."  Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).  However, "a court cannot take judicial notice of disputed facts contained in such records."  Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Likewise, courts may also consider materials outside the pleadings to assess the sufficiency of a complaint through the incorporation-by-reference doctrine.  Id. at 998.  These incorporated materials may involve documents when (1) "the complaint necessarily relies upon [the] document or the contents of the document are alleged in [the] complaint, [(2)] the document's authenticity is not in question and [(3)] there are no disputed issues as to the document's relevance."  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that a document may be incorporated by reference when a plaintiff's claim depends on the contents of the document, even if the plaintiff does not explicitly allege the contents of the document in the complaint, so long as the authenticity of the document is undisputed).

United States District Court
Northern District of California

However, "the mere mention of [a] document is insufficient to incorporate the contents of [the] document." Khoja, 899 F.3d at 1002 (quoting Coto Settlement, 593 F.3d at 1038). Accordingly, incorporation-by-reference requires that the document being incorporated form the basis of the plaintiff's claim, making the claim's adjudication dependent on the document. See id. The Ninth Circuit clarified that "if [a] document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and cannot be incorporated. See id. at 1002–03. Under those circumstances, incorporating these documents would allow a defendant to misuse "the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." See id. at 1002.

Although C&W asks the Court to take judicial notice of twenty-seven exhibits, the Complaint only references three as central to Veritas's claims: (1) Exhibit 9, (2) Exhibit 22, and (3) Exhibit 24.  See generally Request for Judicial Notice (dkt. 35-29) (hereinafter "RJN").

### 4.    Exhibit 9 – Altered Documents

Veritas alleges that C&W breached the covenant of good faith and fair dealing by, among other things, "improperly altering documents after the fact" to make it appear that "Veritas had agreed to reimburse [C&W] for severance payments." See Compl. ¶¶ 2, 39.  As such, the Complaint expressly references "documents" that were "improperly alter[ed]" and this allegation is central to Veritas's claim for breach of the covenant of good faith and fair dealing. See id. Exhibit 9 contains screenshots of the alleged altered documents referenced in the Complaint. See MJOP, Ex. 9 (dkt. 35-10) at ECF 22–23.[4]  Therefore, the Court GRANTS C&W's request and takes judicial notice of Exhibit 9's screenshots for the limited purpose of showing the alleged altered documents and not to prove that the documents are, in fact, altered.

### 5.    Exhibit 22 – Initial Severance Payment Request

As part of Veritas's claim for breach of the covenant of good faith and fair dealing, it alleges that C&W "fabricat[ed] supposed 'offsets.'" See Compl. ¶ 39.  Veritas supports that allegation by repeating and incorporating "the allegations of paragraphs 1 through 34" in the

---

[4]  Because the RJN was attached to the MJOP, for purposes of clarity, the page numbers in this section correspond with the ECF pagination, not the exhibits themselves.

Complaint.  Id. ¶ 35.  Paragraph 20 references an "October 17, 2019" letter from C&W that informed Veritas that "the severance payments in the dispute totaled $586,693.06" and points out that several months later the amount increased to $619,091.14.  Id. ¶ 20.  Exhibit 22 includes a table attached to the October 17, 2019 letter showing the severance payments incurred by C&W and displaying the $586,693.06 amount referenced in the Complaint.  See MJOP, Ex. 22 (dkt. 35-23) at ECF 4.  Therefore, the Court GRANTS C&W's request and takes judicial notice of Exhibit 22's table for the limited purpose of showing the initial severance payment amount requested by C&W and not to prove the accuracy of the amount.

### 6.    Exhibit 24 – Client Fee Share Report

Veritas also supports its claims for account stated, breach of contract, breach of the covenant of good faith and fair dealing, conversion, money had and received, and unjust enrichment by alleging that C&W admitted owing Veritas "at least $1,201,573.66" in commission rebates when it provided a "Client Fee Share Report" on April 14, 2020.  See Compl. ¶¶ 13, 22, 30, 39, 43, 52, 62.  As such, the Complaint expressly references the "Client Fee Share Report" that forms the basis of the aforementioned claims.  Therefore, the Court GRANTS C&W's request and takes judicial notice of Exhibit's 24 "Client Fee Share Report" for the limited purpose of showing the commission rebate balance on the account—before the 10% Transactions Management Fee At Risk—and not to prove the accuracy of the amount. [5]

---

[5]  In their RJN, C&W also attempts to re-introduce the MSA—Exhibit 1—already attached to the Complaint.  See RJN at 1.  The Court DENIES C&W's request because it need not take judicial notice of documents already on the record.  Additionally, the Court DENIES C&W's request to introduce Exhibits 2–8, 10–21, 23, and 25–27 because these are neither documents that the Complaint "necessarily relies" on, nor documents whose relevance is uncontested.  See RJN at 1–3; see also Coto Settlement, 593 F.3d at 1038.  First, Veritas disputes the relevance of these documents by arguing that C&W cites to these materials "for the sole purpose of refuting factual allegations in the Complaint—in particular, the allegations that commission rebates were included in the parties' dispute-resolution process."  See Opp'n at 5.  Second, Veritas's claims neither rely on these documents nor sufficiently allege the contents of these documents in the Complaint.  See Coto Settlement, 593 F.3d at 1038.  Therefore, allowing C&W to incorporate these documents by reference would effectively allow C&W to "insert [its] own version of events into the complaint to defeat [Veritas's] otherwise cognizable claims."  Khoja, 899 F.3d at 1002–03.

United States District Court
Northern District of California

8

### B.    Judgment on the Pleadings

#### 1.    Declaratory Judgment

##### a.    Parties' Arguments

Veritas seeks declaratory judgment "that the [MSA] does not require it to reimburse [C&W]'s severance and redundancy payments to personnel who worked on Veritas'[s] account." Compl. ¶ 74.  C&W seeks judgment on the pleadings as to that claim, arguing that the MSA unambiguously requires Veritas to pay severance costs for C&W's personnel.  See MJOP at 5–6.

Specifically, C&W argues that four provisions in the MSA demonstrate that Veritas is required to pay severance following Termination for Convenience: (1) Section 39.4, (2) Section 23.1, (3) Item 3.2 of Exhibit D, Attachment A, and (4) Tab 8, Line 5 of Exhibit D, Attachment E. See id. at 6.  First, Section 39.4 outlines what costs Veritas must pay to C&W following a Termination for Convenience.  It states that "Veritas shall [] pay all amounts due and payable to [C&W] under [the MSA] up to the date of [] termination."  See id.; see also MSA § 39.4.  Second, Section 23.1 explains that "[a]mounts [p]ayable by Veritas" are those "Charges to or for the benefit of" C&W "as described and at the times provided in Exhibit D."  See MSA § 23.1.  Third, Exhibit D, Attachment A, Item 3.2 categorizes "Severance for [C&W] Personnel" as "Labor related support costs" that are separately reimbursable to C&W as a "Pass-Through Expense." See Attach. A at A-1–A-2.  Finally, Exhibit D, Attachment E, Tab 8, Line 5 states that an agreed assumption under the MSA is that severance "has never been included in [C&S's] burden rate" and is "paid by [Veritas] whenever payable."  See Attach. E at 15.[6]

Veritas argues that it is not required to pay severance to C&W's personnel because those costs are "future expenses" that are "anticipated post-termination" and thus "not due and payable before termination" of the MSA.  See Opp'n at 8–9 (emphasis added).  However, C&W argues that because it requested the severance payments before the date of termination, Item 3.2 controls and makes those amounts "due and payable" as "pass-through expenses."  See Reply (dkt. 40) at 3–4; see also Attach. A at A-2.  C&W adds that Veritas never pleaded that severance payments were "future expenses," nor does Veritas's request for declaratory relief refer to future expenses.

---

[6] Veritas's Opposition fails to address the language in Tab 8, Line 5.

1    Reply at 3–4 (citing Compl. ¶ 74); but see Compl. ¶ 71 ("severance payments would typically not

2    be accrued until after the contract (and any redundant personnel) were terminated.").

3            Alternatively, Veritas argues that it is "only required to pay a budgeted sum for severance

4    over the first two years" of the MSA, pointing to Exhibit D, Attachment E, in which "severance

5    fees" appear under the heading "Other Costs," and are only budgeted in the first two years of the

6    MSA.  See Opp'n at 9; Compl. ¶ 71.  Veritas thus argues that "the plain language of the [MSA]

7    demonstrates that Veritas was not required to reimburse severance expenses for C&W personnel

8    beyond the first two years of the [MSA]."  Opp'n at 10.  Veritas argues that Item 3.2—which

9    designates "Severance for [C&W] Personnel" as a "Pass-Through Expense"—must be read in

10   conjunction with the two-year budget allocation for severance fees, because C&W's reading—that

11   Veritas is responsible for severance payments for the duration of the MSA and perhaps beyond

12   it—would render the two-year budget meaningless.  See id.; see also Attach. A at A-2.

13           C&W, however, responds that "[t]here is a distinct[ion] between 'Severance Fees' and

14   'Severance of [C&W] Personnel,'" explaining that "Severance Fees" appear as "Other Costs,"

15   while "Severance of [C&W] Personnel" constitutes a different type of cost—a "Labor related

16   support cost[]."  See Reply at 4.  C&W argues that Veritas's focus on "Severance Fees" is

17   misplaced because both parties budgeted expected "Severance Fees," not unexpected costs for

18   "Severance of [C&W] Personnel."  Id.

19                   **b.      Ambiguity re Severance in the MSA**

20           A court may resolve contractual claims on a motion for judgment on the pleadings if the

21   terms of the contract are unambiguous.  See Tr.'s of Screen Actors Guild-Producers Pension &

22   Health Plans v. NYCA, Inc., 572 F.3d 771, 778–79 (9th Cir. 2009) (holding that when the

23   language of a contract is susceptible to more than one interpretation, it is ambiguous and therefore

24   not appropriate to determine on a motion to dismiss); Schertzer v. Bank of America, N.A., 489 F.

25   Supp. 3d 1061, 1079–81 (S.D. Cal. 2020) (holding that when "key term in dispute . . . is open to

26   opposing reasonable interpretations," contract is ambiguous and "[r]esolving the alleged

27   ambiguity is not appropriate on a motion to dismiss."); see also Chavez, 683 F.3d at 1108

28   (explaining that analysis on a motion for judgment on the pleadings is "substantially identical" to

United States District Court
Northern District of California

1     analysis on a motion to dismiss).

2            The provisions in the MSA relating to severance payments after Termination for

3     Convenience are ambiguous in at least a couple of respects.

4            The first issue involves timing, as articulated in the body of the MSA and in Exhibit D.

5     Section 39.4 delineates what costs Veritas must pay to C&W upon Termination for Convenience,

6     stating that Veritas is only responsible for "all amounts due and payable to [C&W] . . . up to the

7     date of [] termination." See MSA § 39.4 (emphasis added).  Section 23.1 specifies what amounts

8     are "Payable by Veritas" and limits these amounts to "Charges to or for the benefit of [C&W] as

9     described and at the times provided in Exhibit D." See id. § 23.1.  Section 38.2 (Termination for

10    Convenience) further states that termination for convenience limits Veritas's liability "to the

11    extent specified in Section 39." See id. § 38.2.  Additionally, Section 23.2 states that C&W "shall

12    not charge Veritas for any fees, charges, expenses (including . . . any additional or unforeseen

13    costs incurred by [C&W]) in addition to the Controllable Costs without the prior written consent

14    of Veritas."[7]  See id. § 23.2 (emphasis added).  Exhibit D discusses severance in three sections: (1)

15    in Attachment E, Tab 7, Line 5, where "Severance Fees" appear as "Other Costs" (i.e., non-

16    Controllable Costs), (2) in Attachment A, Item 3.2, listing "Severance for [C&W] Personnel" as

17    "Labor related support costs" that are "separately reimbursable to [C&W]" as a "Pass-Through

18    Expense," and (3) in Attachment E, Tab 8, Line 5, under an assumption referring to C&W's

19    burden rate, and stating that severance is paid by Veritas "whenever payable." See MSA Ex. D

20    Attach. A at A-1–A-2; Attach. E at 13, 15.

21           Under Exhibit D, then, severance costs are due as a pass-through expense "whenever

22    payable," suggesting that there is no time limitation on when C&W can request these costs, see

23    Attach. E at 15, while under Section 39.4, there is a cut-off for reimbursements at "the date of

24    termination," MSA § 39.4.  Because of that tension, it is unclear under the MSA whether merely

25    requesting severance costs before the termination of the MSA, see Reply at 3 (noting that C&W

26

27    [7]  It is an open question whether the addition of the provisions relating to severance in Exhibit D
      (Attachment A's Item 3.2 and Attachment E's Tab 8, Line 5), which do not fall under
28    "Controllable Costs," qualify as C&W obtaining Veritas's "prior written consent" for these
      additional charges, given that these were incorporated into the MSA.

United States District Court
Northern District of California

United States District Court
Northern District of California

requested severance payments before the end of the MSA), is sufficient to secure payment in connection with employees whose employment is severed after (or as a result of) the termination of the MSA, see Opp'n at 9 (referring to "C&W's anticipated post-termination severance expenses").

The second issue involves the severance fees provision. C&W's explanation of "severance fees" as a concept entirely divorced from "severance costs," see Reply at 4, makes some sense, but it is not the only reasonable interpretation of those terms in the contract. Veritas discusses "severance," "severance fees," and "severance expenses" interchangeably. See Opp'n at 9–10. It is not clear that Veritas's assertion—that it "was only required to pay a budgeted sum for severance over the first two years of the contract," Opp'n at 9 (citing MSA Ex. D Attachment E)—is clearly incorrect. Even accepting C&W's explanation that severance fees are something different from severance costs, and "not at issue" here, the language in Exhibit D making severance costs a pass-through expense for Veritas to reimburse "whenever payable" is arguably in tension with the budget for severance fees. Can Veritas be responsible for paying all severance expenses without limitation, but also be limited to two years of budgeted severance fees? Maybe, but the MSA does not unambiguously say this.

Accordingly, the MSA is ambiguous regarding severance payments. The Court cannot resolve that ambiguity at this stage of the litigation, as C&W suggests, by looking at Veritas's practice of paying some severance costs in the second two years of the contract, see Mot. at 7, because "C&W's [allegedly] opaque billing practices were the root cause of several claims asserted in this lawsuit," Opp'n at 10–11 (citing Compl. ¶¶ 1, 9, 15). The Court may not resolve these contractual disputes on a motion for judgment on the pleadings, and therefore DENIES C&W's motion as to this cause of action. See NYCA, Inc., 572 F.3d at 777.

### 2.    Commission Rebates – Condition Precedent

C&W also seeks judgment on the pleadings as to Veritas's claim for $1,201,573.66 in commission rebates, arguing that Veritas did not follow the MSA's dispute resolution process and

therefore breached the MSA by failing to satisfy a condition precedent before filing suit.[8]  See

MJOP at 8–9; Reply 5–7.  In response, Veritas argues that because its "Complaint pleads that the

parties invoked the dispute resolution process and held a series of telephone conferences between

various executives between April 2019 and October 2019" it has sufficiently alleged that it

satisfied all conditions precedent such that it should survive C&W's attempt to dismiss at this

early stage.  See Opp'n at 6, 8; see also Compl. ¶ 19.

Rule 9(c) of the Federal Rules of Civil Procedure provides that "[i]n pleading conditions

precedent, it suffices to allege generally that all conditions precedent have occurred or been

performed."  In its Complaint, Veritas alleges that "[p]ursuant to the dispute resolution provisions

of the [MSA]," it "exchanged numerous letters between April 2019 and October 2019 in an

attempt to resolve . . . outstanding issues, including . . . missing commission rebates."  Compl. ¶

19.  Veritas states that it "held a series of telephone conferences between various [C&W]

executives between July 2019 and October 2019," but "[n]o resolution was reached."  Id.

Because, at this stage, the Court "must presume all factual allegations of the complaint to

be true and draw all reasonable inferences in favor of the nonmoving party," Veritas has

sufficiently pled that it generally complied with the dispute resolution process.  See Usher, 828

F.2d at 561.  The dispute resolution process required Veritas to provide notice of the dispute to

C&W and engage in a series of escalating communications between various party representatives

before commencing any court proceedings.  See MSA §§ 34.3–34.4.  Although Veritas did not

specify which representatives or executives were involved in the "numerous letters" and "series of

telephone conferences," it is a reasonable inference in favor of Veritas that the representatives and

executives identified in the MSA were the ones involved in the letters and telephone conferences.

See Compl. ¶ 19.  Therefore, Veritas has sufficiently pled that it generally satisfied the dispute

resolution process; the Court DENIES C&W's motion seeking to dismiss Veritas's claim for

---

[8]  C&W points to documents that it seeks to incorporate by reference to show that, contrary to
Veritas's allegations, Veritas did not satisfy the dispute resolution process.  See Reply at 5–7.
However, these documents are not incorporated by reference because the Complaint merely
mentions the documents—"letters between April 2019 and October 2019"—and does not rely on
their content to support any of its claims.  See Coto Settlement, 593 F.3d at 1038; see also Compl.
¶ 19.

United States District Court
Northern District of California

commission rebates.

### 3. Breach of Contract – Doctrine of Laches

C&W also argues that the Court should grant it judgment on the pleadings as to Veritas's claims for damages related to (1) EH&S services, (2) budget overruns on a construction project in Brazil, and (3) severance payments to three C&W employees in California and Florida based on the laches defense. See MJOP at 11; see also Compl. ¶ 30. Veritas responds that C&W is not entitled to the laches defense because it cannot prove either (1) an unreasonable delay by Veritas in bringing these claims, or (2) prejudice to C&W. See Opp'n at 12.

"To establish laches a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000) (citing Costello v. United States, 365 U.S. 265, 282 (1961)). C&W argues that it has been prejudiced by Veritas's delay in bringing these claims "because of lost or degraded evidence." See MJOP at 12; Reply at 8. However, making "generic claims of prejudice do not suffice for a laches defense" and require a defendant to explain what specific "witnesses and/or documentary evidence [] will be unavailable because of the passage of time." See In re Beaty, 306 F.3d 914, 928 (9th Cir. 2002). Here, C&W failed to explain what specific evidence will be "lost or degraded," aside from the single example of timesheets, and therefore only made "generic claims of prejudice" in its motion. See MJOP at 12; Reply at 8; see also In re Beaty, 306 F.3d at 928. Therefore, the Court DENIES C&W's motion for judgment on the pleadings as to this claim.

### 4. Account Stated

Next, C&W requests judgment on the pleadings as to Veritas's claim for an account stated, arguing that the amounts Veritas seeks under this claim are predicated on its breach of contract claim and not on a "new contract." See MJOP at 12; Reply at 8. Veritas responds that a new agreement, separate from the MSA, was created when C&W provided Veritas with a "Client Fee Share Report" on April 14, 2020 listing the "rebates [C&W] had failed to pay to Veritas." See Compl. ¶ 22. Veritas argues that by presenting Veritas with a report of the unpaid rebates, C&W admitted owing these amounts to Veritas and was promising to pay them. See id. ¶¶ 22–24. Additionally, Veritas argues that because the "MSA does not bind C&W to pay a specific sum"

14

United States District Court
Northern District of California

1   for the rebates, the MSA does not preclude Veritas from bringing an account stated claim.  <u>See</u>

2   Opp'n at 12–13.

3          "An account stated is an agreement, based on prior transactions between the parties, that all

4   items of the account are true and the balance struck is due and owing from one party to the other."

5   <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1091 (9th Cir. 1989) (quoting <u>Trafton v. Youngblood</u>,

6   442 P.2d 648, 653 (Cal. 1968)).  There are three essential elements to an account stated: "(1)

7   previous transactions between the parties establishing the relationship of debtor and creditor; (2)

8   an agreement between the parties, express or implied, on the amount due from the debtor to the

9   creditor; (3) a promise by the debtor, express or implied, to pay the amount due."  <u>Zinn v. Fred R.</u>

10   <u>Bright Co.</u>, 271 Cal. App. 2d 597, 600 (1969).  However, "not every debt . . . can form the basis of

11   an account stated," particularly when it is being used as a "substitute for an action of debt upon a

12   [contract]" involving a contractually "specified sum," because a creditor under these

13   circumstances is not required to resort to a new contract to collect such a debt.  <u>See Prof'l</u>

14   <u>Collection Consultants v. Lauron</u>, 8 Cal. App. 5th 958, 971 n.5 (2017).

15          Contrary to Veritas's assertions, the "Client Fee Share Report" did not constitute a new

16   agreement between the parties because the amounts in the report—which form the debt at issue—

17   were based on the express terms of the MSA, not a new agreement.  <u>See id.</u> (explaining that the

18   rule that "a debt which is predicated upon the breach of the terms of an express contract cannot be

19   the basis of an account stated" rests on the rationale that the original express contract is the best

20   evidence of the amount due when it binds the debtor to pay a specified sum and does not extend to

21   contracts that do not bind a debtor to a specified sum) (quoting <u>Moore v. Bartholomae Corp.</u>, 159

22   P.2d 474, 477–78 (Cal. Ct. App. 1945)).  The MSA establishes the ranges for the rebate amounts

23   that C&W is obligated to pay Veritas, represented as a table in Exhibit D.  <u>See</u> Ex. D § 6.5 at 11–

24   12.  Therefore, Veritas's account stated claim is predicated on a contractually "specified sum,"

25   rather than a new agreement between the parties.

26          Accordingly, the Court GRANTS C&W's motion as to the claim for an account stated.

27          **5.      Breach of the Covenant of Good Faith and Fair Dealing**

28   C&W also asks the Court to grant it judgment on the pleadings as to Veritas's claim for

1   breach of the covenant of good faith and fair dealing, arguing that the allegations supporting this

2   claim do not go beyond a mere breach of contract.  See MJOP at 12–13.  Veritas, however, argues

3   that its allegations about C&W's bad faith conduct—describing how it "altered a disengagement

4   document to make it appear that Veritas agreed to pay future, post-termination severance"—do go

5   beyond a mere breach of contract.  See Compl. ¶¶ 2, 39; Opp'n at 13.

6        "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff

7   must establish the existence of a contractual obligation, along with conduct that frustrates the other

8   party's rights to benefit from the contract."  Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d

9   1111, 1129 (N.D. Cal. 2009).  "[T]he covenant prevents a party from acting in bad faith to

10  frustrate [a] contract's actual benefits."  Guz v. Bechtel Nat. Inc., 8 P.3d 1089, 1112 n.18 (Cal.

11  2000) (emphasis in original).  "If the allegations [in a claim for breach of the implied covenant] do

12  not go beyond the statement of a mere contract breach and, relying on the same alleged acts,

13  simply seek the same damages or other relief already claimed in a companion contract [claim],"

14  they may be disregarded as superfluous because no additional claim has actually been stated.

15  Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990).

16       Veritas's allegations supporting its claim for breach of the covenant of good faith and fair

17  dealing do not merely recite a contractual breach.  Veritas alleges that C&W "unfairly

18  interfere[d] with Veritas'[s] right to receive certain payments" under the MSA and deliberately

19  "altered a disengagement document to make it appear that Veritas agreed to pay future, post-

20  termination severance."  See Compl. ¶¶ 2, 39; Opp'n at 13.  Allegations that describe a party's

21  "failure or refusal to discharge [its] contractual responsibilities," that are not due to "an honest

22  mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly

23  frustrates the agreed common purposes and disappoints the reasonable expectations of the other

24  party" amount to a deprivation of the "benefits of the agreement."  See Careau, 222 Cal. App. 3d

25  at 1395.  Veritas further alleges that C&W deprived it of the benefits of the MSA by refusing to

26  pay it rebates to which it is entitled and by billing it for costs that it was not obligated to pay.  See

27  Compl. ¶¶ 2, 38–39; Opp'n at 13.

28       Because the Court "must presume all factual allegations of the complaint to be true and

United States District Court
Northern District of California

16

draw all reasonable inferences in favor of the nonmoving party," Veritas has plausibly alleged a claim for breach of the covenant of good faith and fair dealing.  See Usher, 828 F.2d at 561. Accordingly, the Court DENIES C&W's motion as to the claim for breach of the covenant of good faith and fair dealing.

### 6.    Money Had and Received

C&W also seeks judgment on the pleadings as to Veritas's claim for money had and received, arguing that because Veritas uses that claim as an alternative means of seeking the same recovery demanded in the account stated and breach of contract claims, the count for money had and received falls when those other causes of action fall.  See MJOP at 13; Reply at 9.  In response, Veritas argues that its claim for money had and received "is proper for the same reasons that its claims for account stated and breach of contract are proper."  Opp'n at 14.

A claim for money had and received may be brought whenever "one person has received money which belongs to another and which in equity and good conscience . . . should be returned."  Mains v. City Title Ins. Co., 212 P.2d 873, 876 (Cal. 1949).  It applies to (1) money paid by mistake, (2) money paid pursuant to a void contract, or (3) when one party performs under an express contract, but "nothing of value has been received under the contract by the party . . . seeking restitution."  See Utility Audit Co., Inc. v. City of L.A., 112 Cal. App. 4th 950, 958 (2003); see also Rutherford Holdings, LLC v. Plaza Del Rey, 223 Cal. App. 4th 221, 230 (2014) (internal citation omitted).  However, when a claim for money had and received "is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts," the claim for money had and received is dismissible if the specific cause of action is dismissible.  See McBride v. Boughton, 123 Cal. App. 4th 379, 394 (2004).

Although the Court herein rejects Veritas's claim for an account stated, the claim for money had and received does not "fall" with the account stated claim because the recovery sought under this claim is also sought under Veritas's other undismissed claims for conversion and breach of contract.  See Compl. ¶ 43; see also supra III(B)(4); supra II(B)(3).  Accordingly, the Court DENIES C&W's motion seeking to dismiss Veritas's claim for money had and received.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### 7.    Unfair Competition

C&W also seeks judgment on the pleadings as to Veritas's claim for restitution under California's Unfair Competition Law ("UCL"), arguing that: (1) the claim is duplicative of Veritas's breach of contract and unjust enrichment claims, which seek an adequate remedy at law, and (2) Veritas failed to state a claim under the UCL because it did not explain how C&W's conduct was unlawful, unfair, or fraudulent. See MJOP at 13; Reply at 9. Veritas responds that it premises its unfair competition claim on conversion, not a breach of contract. See Opp'n at 14. Additionally, Veritas argues that by alleging that C&W's "refus[ed] to pay Veritas commission rebates and refunds for improper billing practices," it has plausibly pled an unfair business act or practice under the UCL. See id.

California's UCL is a broad remedial statute that prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A plaintiff must allege that the alleged conduct is either "(1) proscribed by law, (2) unfair, meaning the harm to the victim outweighs any benefit, or (3) fraudulent, meaning it is likely to deceive members of the public." Quattrocchi v. Allstate Indemnity Co., No. 2:17-cv-01578-JAM-EFB, 2018 WL 347779, at *2 (E.D. Cal. Jan. 9, 2018) (citing Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033 (9th Cir. 2003)). Each of these prongs provides for a "'separate and distinct theory of liability' and an independent basis for relief." Cappello v. Walmart Inc., 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019) (internal citation omitted).

A federal court in a diversity action cannot award restitution to a party under the UCL without that party first establishing that it lacks an adequate remedy at law. See Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020). In Sonner, the Ninth Circuit held that the plaintiff's request for restitution under the UCL was dismissible because "the operative complaint [did] not allege that [the plaintiff] lack[ed] an adequate legal remedy." Id. The court further explained that because the plaintiff "fail[ed] to explain how the same amount of money for the exact same harm [was] inadequate or incomplete . . . [it] fail[ed] to establish that [it] lack[ed] an adequate remedy at law," making the dismissal of "[plaintiff's] claims for equitable restitution

under the UCL" appropriate.  Id.  Therefore, under Sonner, plaintiffs must plead that they lack an adequate remedy at law before being awarded restitution under the UCL.  See Anderson v. Apple Inc., 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020).

Veritas's unfair competition claim seeks restitution, see Compl. ¶ 60, but fails to plead that a remedy at law seeking damages for "the same amount of money [and] for the exact same harm" is inadequate.  See Sonner, 971 F.3d at 844.  Although Veritas can pursue equitable claims in the alternative to legal remedies,[9] it is still required to plead that legal remedies are inadequate.  See id.; see also Anderson, 500 F. Supp. 3d at 1009.  Because Veritas seeks "the same amount of money for the same harm" in its conversion and breach of contract claims—claims that Veritas concedes are "actions at law for damages"—as in its unfair competition claim, it must plead that damages are inadequate.  See Sonner, 971 F.3d at 844; see also Opp'n at 11.  Accordingly, the Court GRANTS C&W's motion as to the unfair competition claim, with leave to amend.  See Fed. R. Civ. P. 15(a)(2).

### 8.    Unjust Enrichment

C&W next argues that the Court should grant judgment on the pleadings as to Veritas's claim for unjust enrichment, because Veritas "has alleged an adequate remedy at law."  See MJOP at 14; Reply at 10.  Veritas responds that its unjust enrichment claim is "expressly pleaded in the alternative" and "limited to circumstances in which the MSA is not enforceable or in which certain claims or overpayments are not governed by the [MSA]."  See Opp'n at 14–15; Compl. ¶ 62.

Under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."  Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); see also Lance Camper Mfg. Corp. v. Republic Indemnity Co., 44 Cal. App. 4th 194, 203 (1996) ("[I]t is well settled that an action based on [a] . . . quasi-contract cannot lie where there exists between the parties a valid

---

[9]  In its Opposition, Veritas cites to Haas v. Travelex Ins. Serv.'s Inc. to argue that Sonner does not prohibit "plaintiffs to plead in the alternative at the earliest stages of litigation."  See Opp'n at 14; No. 20-cv-6171-ODW, 2021 WL 3682309, at *6 (C.D. Cal. Aug. 19, 2021).  However, Veritas does not address the inadequacy of its legal remedies, which is required even if it pled in the alternative.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    express contract covering the same subject matter.").  As such, a party alleging the existence of a

2    written contract in an unjust enrichment claim "must allege that the express contract is void or was

3    rescinded" to proceed with the unjust enrichment claim.  See Lance Camper Mfg. Corp., 44 Cal.

4    App. 4th at 203.

5        A party may assert a claim "regardless of consistency" with its other theories of liability.

6    See Fed. R. Civ. P. 8(d)(3).  Rule 8(d)(2) of the Federal Rules of Civil Procedure expressly

7    permits pleading in the alternative, even if the claim is inconsistent with other claims.  When a

8    party pleads the existence of an express contract as part of an unjust enrichment claim that is pled

9    in the alternative, it "must allege that the express contract is void or was rescinded."  See Lance

10   Camper Mfg. Corp., 44 Cal. App. 4th at 203.  Veritas did just that; it pled the unjust enrichment

11   claim in the alternative and limited its application to circumstances in which the MSA was void

12   and unenforceable.  Compl. ¶ 62; Opp'n at 14–15.  Although C&W argues that Sonner requires

13   Veritas to plead that it lacks an adequate remedy at law before it can request restitution through an

14   equitable claim for unjust enrichment, Sonner considered UCL and CLRA claims, not an unjust

15   enrichment claim.  See Sonner, 971 F.3d at 844.  Accordingly, the Court DENIES C&W's motion

16   as to the claim for unjust enrichment.

### 9.    Exemplary Damages

18       Lastly, C&W argues that the Court should grant it judgment on the pleadings as to

19   Veritas's request for exemplary damages, because California law precludes exemplary damages

20   for breaches of contract.  MJOP at 14.  C&W argues that Veritas's conversion claim—which seeks

21   exemplary damages—is premised on a breach of contract because it seeks "the same sums . . . [as]

22   its breach of contract claim."  Reply at 10.  Veritas responds that because C&W is not seeking to

23   dismiss the conversion claim, "which is distinct from [a] breach of contract when [C&W] refuses

24   to return undisputed sums under contract," exemplary damages are appropriate.  Opp'n at 15.

25       Under California Civil Code Section 3294, a party is entitled to exemplary damages

26   whenever it can show that there was a "breach of an obligation not arising from contract" due to a

27   defendant's oppressive, fraudulent, or malicious conduct.  See Cal. Civ. Code § 3294(a) (emphasis

28   added).  A party is not entitled to exemplary damages for breaches of contract.  See Haigler v.

1   <u>Donnelly</u>, 117 P.2d 331, 335 (Cal. 1941) ("[E]xemplary damages may not be recovered in an

2   action based upon a contractual obligation even though the breach of contract is willful or

3   malicious.").

4         Veritas's request for exemplary damages, although sought in its conversion claim, is

5   nonetheless premised on a breach of contract, because the sum Veritas requests is based on the

6   terms of the MSA. <u>See</u> Compl. ¶¶ 43, 50. As alleged in the Complaint, C&W's failure to "remit

7   the converted funds" occurred "in relation to the parties' negotiations over severance costs" under

8   the MSA. <u>See id.</u> ¶ 50. As such, Veritas's request for exemplary damages in its conversion claim

9   is premised on "an obligation [] arising from contract" and cannot be the basis for an award of

10  exemplary damages. <u>See</u> Cal. Civ. Code § 3294(a). Accordingly, the Court GRANTS C&W's

11  motion as to the request for exemplary damages.

12  **IV.**    **CONCLUSION**

13         For the foregoing reasons, the Court GRANTS in part (as to the account stated claim,

14  unfair competition claim, and request for exemplary damages) and DENIES in part (as to the

15  remaining claims) C&W's motion.

16         **IT IS SO ORDERED.**

17         Dated: January <u>25</u>, 2022

18                                  CHARLES R. BREYER
                                      United States District Judge

United States District Court
Northern District of California